UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORINNA RUIZ,<br><br>Plaintiff,<br><br>v.<br><br>PARADIGMWORKS GROUP, INC. and CORNERSTONE SOLUTIONS, INC.,<br><br>Defendants. | Case No.: 16-CV-2993-CAB-BGS<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 35, 37] |

This matter is before the Court on Defendants' motions for summary judgment. The motions have been fully briefed, and the Court deems them suitable for submission without oral argument. For the following reasons, the motions are granted.

**I.    Background**

Defendant Paradigmworks Group, Inc. ("PGI"), provided outreach admission services pursuant to a subcontract with Defendant Cornerstone Solutions, Inc. ("Cornerstone") in San Diego, California. PGI first hired Plaintiff Corinna Ruiz as an outreach and admissions counselor at its El Centro, California, office in October 2009. [Doc. No. 37-3 at 19.] Her job duties included recruiting, interviewing, and processing prospective employees, providing customer service and answering phone calls and emails, and working with agencies and schools. [*Id.* at 23-24.] On October 31, 2014, PGI relocated

Ruiz to an office in San Diego after the El Centro office closed. [*Id.* at 70.] PGI's subcontract with Cornerstone required PGI to have five admissions counselors performing the scope of work of the subcontract, with acceptable staff vacancy periods not to exceed thirty days. [Doc. No. 47-1 at 7.]

On November 11, 2015, Ruiz fell and broke her ankle. [Doc. No. 40-2 at ¶¶ 2-3.] Following the fall, Ruiz's doctor faxed a note to PGI stating that Ruiz was temporarily totally disabled from November 16 to 20, 2015. [*Id.* at ¶ 3; Doc. No. 37-3 at 99.] On November 20, 2015, Ruiz's doctor provided another note to PGI stating that Ruiz would be temporarily totally disabled through February 22, 2016. [Doc. No. 40-2 at ¶ 4; Doc. No. 37-3 at 101.] On November 23, 2015, Ruiz underwent surgery on her ankle. [Doc. No. 40-2 at ¶ 4.] Based on these notes from her doctor, PGI provided Ruiz with unpaid leave through February 22, 2016. [Doc. No. 40-8 at 2.] While Ruiz was on leave, Ruiz could not perform any essential functions of her job. [Doc. No. 37-3 at 30.] Meanwhile, Ruiz received disability benefits from state of California from November 21, 2015 through September 23, 2016. [Doc. No. 37-3 at 18, 48.]

On February 18, 2016, Ruiz's doctor provided a new note stating that she would be temporarily totally disabled through April 1, 2016. [Doc. No. 37-3 at 114.] On February 29, 2016, PGI terminated Ruiz's employment. [Doc. No. 37-3 at 116.] PGI's president, however, invited Ruiz to apply for any positions that became available when she was able to work again. [Doc. No. 37-3 at 83-84, 90-91.] A position with PGI subsequently became available, but Ruiz did not apply. [Doc. No. 37-3 at 92.]

**II.     Legal Standard**

The familiar summary judgment standard applies here. A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56. To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that

are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing *Anderson*, 477 U.S. at 248).

Typically, the initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *See Celotex Corp.*, 477 U.S. at 322-323. If the moving party can demonstrate that its opponent has not made a sufficient showing on an essential element of his case, the burden shifts to the opposing party to set forth facts showing that a genuine issue of disputed fact remains. *Id.* at 324. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

Here, however, Ruiz's employers (or alleged employers) are moving for summary judgment meaning:

> "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." *Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) (quotation omitted). "Thus, [t]o prevail on summary judgment, [the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." *Id.* (quotation omitted) (alterations in original). If the employer meets its burden, the discharged employee must demonstrate either "that the defendant's showing was in fact insufficient or ... that there was a triable issue of fact material to the defendant's showing." *Id.* at 746 (quotation omitted) (omission in original).

*Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1242 (9th Cir. 2013).

### III. PGI's Motion for Summary Judgment

#### A. Disability Discrimination Claims

Ruiz asserts five disability discrimination claims under the federal Americans with Disability Act ("ADA") and California's Fair Employment and Housing Act ("FEHA").[1] "[T]to establish that a defendant employer has discriminated on the basis of disability in violation of the FEHA, the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation." *Green v. State*, 42 Cal. 4th 254, 262 (2007). This requirement is "strikingly similar to the ADA, which . . . prohibits employer discrimination against any 'qualified individual with a disability," i.e., discrimination against 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." *Id.* at 262-63 (quoting 42 U.S.C. § 12111(8)). Thus, "the FEHA and the ADA both limit their protective scope to those employees with a disability who can perform the essential duties of the employment position with reasonable accommodation." *Id.* at 264; *see also Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 999 (9th Cir. 2007) (en banc) (citing *Green* and applying same qualified individual analysis to both ADA and FEHA disability discrimination claims asserted by the plaintiffs). PGI argues that it is entitled to summary judgment on these claims because Ruiz cannot establish that she is a qualified individual with a disability.

Ninth Circuit and California law concerning whether a plaintiff is a "qualified individual with a disability," under the ADA or FEHA is somewhat inconsistent. The frequently stated standard is that "[a]n individual is qualified if 'with or without reasonable accommodation, [she] can perform the essential functions of the employment position....'" *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (quoting

---

[1] These claims are: (1) disability discrimination under the ADA; (2) failure to accommodate disability in violation of the ADA; (3) disability discrimination under FEHA; (4) failure to accommodate disability under FEHA; and (5) failure to enter into good faith process under FEHA.

4

42 U.S.C. § 12111(8)). Based on this standard, common sense would indicate that "'if one is not able to be at work, one cannot be a qualified individual.'" *Id.* (quoting *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999)). Applying this standard here, because it is undisputed that Ruiz was totally disabled, i.e., unable to perform any of the essential functions of her position, when she was terminated, common sense would indicate that she was not a qualified individual. *Cf. Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1482 (9th Cir. 1996) ("Because she was totally disabled, there was no genuine issue that she could have performed her job with the proposed, or any other, accommodation.").

Yet, the analysis is not so cut and dry. On the one hand, consistent with the above, the Ninth Circuit has noted that "[a]n employer may . . . lawfully discharge an employee who 'is unable to perform his or her essential duties . . . even with reasonable accommodations.'" *Lawler*, 704 F.3d at 1241 (quoting Cal. Gov't Code § 12940(a)(1)). On the other hand, "an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does not pose an undue hardship on the employer." *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999); *see also Hanson v. Lucky Stores. Inc.*, 74 Cal. App. 4th 215, 226 (1999) ("A finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties."); *but see Samper*, 675 F.3d at 1240 (noting that the plaintiff's request to miss work whenever needed is essentially a request for "a reasonable accommodation that *exempts* her from an essential function"). "An employer, however, is not required to provide an indefinite leave of absence as a reasonable accommodation." Cal. Code Regs. tit. 2, § 11068. Thus, an individual who cannot perform any of the essential functions of her position may nevertheless be "qualified" if she will be able to perform those functions at some definite point in the future, and if it would not pose an undue hardship on the employer to give the individual leave until that time arrives.

In any event, the burden is on the plaintiff to establish that medical leave would be a reasonable accommodation. *Green v. State*, 42 Cal.4th 254, 260 (2007) ("[T]he

Legislature has placed the burden on the plaintiff to show that he or she is a qualified individual under FEHA (i.e., that he or she can perform the essential functions of the job with or without reasonable accommodation)."). Ruiz offers no evidence to satisfy this burden. She frames the issue as whether additional leave until April 1, 2016 based on her third doctor's note would have been a reasonable accommodation, but she ignores that PGI had already given her two prior leave periods and she had been unable to return at the end of either of them. Even a finite leave is not a reasonable accommodation unless "it is likely that at the end of the leave, the employee would be able to perform his or her duties." *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (1999); *see also Markowitz v. UPS*, No. 15-cv-1367-AG-DFM, 2016 WL 3598728 at *7 (C.D. Cal. June 30, 2016) (granting summary judgment for employer when employee had not presented any medical evidence indicating that she could return to work, and employer had already provided a year of medical leave).

Ruiz offers no evidence that she would have been ready to return to work on April 1, 2016, and based on her inability to return to work at the end of the periods stated in the two previous doctor's notes, PGI had no reason to believe that she would be able to return to work on April 1, 2016 based on the third doctor's note. Indeed, Ruiz continued to receive disability benefits from the state of California until September 2016, indicating that her disability did not end on April 1. Thus, the undisputed evidence is that Ruiz was totally disabled when PGI terminated her employment, and there is no evidence that a finite end date to this total disability was known when Ruiz was terminated.[2] "Courts in the Ninth Circuit have routinely held that when [as is the case here] a plaintiff has not been released by her doctor to return to work, she has not met the second requirement of the prima facie case that she be qualified to perform the essential functions of the job." *Yates v. Health*

---

[2] These facts distinguish this case from *Nunes*, where the plaintiff was terminated from her position as a sales associate at a Wal-Mart store while she was on medical leave, and there was evidence that the plaintiff had recovered from the medical condition that prompted the leave around the time when her leave was set to end. *See Nunes*, 164 F.3d at 1246.

*Servs. Advisory Grp., Inc.*, No. 216CV04032CASPLAX, 2017 WL 3197228, at *7 (C.D. Cal. July 24, 2017) (citing cases; internal quotation marks and brackets omitted).

In light of the foregoing, Ruiz's dispute of PGI's argument that additional leave would have imposed an undue burden because PGI's contract with Cornerstone required five admissions counselors is irrelevant. "The question presented . . . is not whether [an accommodation] imposes an undue hardship, but whether the accommodation requested is reasonable and thus required in the first place." *Raine v. City of Burbank*, 135 Cal. App. 4th 1215, 1227 (2006). Ruiz has the burden of proving that her requested extension of leave was a reasonable accommodation. *Green*, 42 Cal.4th at 260. She has not satisfied that burden. Moreover, Ruiz's arguments that PGI was already violating requirements of its subcontract with Cornerstone when she initially went on leave does not help her position that continued leave would not impose an undue burden on PGI. If, as the opposition claims, Ruiz was only one of three people tasked to do work that the Cornerstone contract required five people to do, an extended medical leave would have imposed an even greater burden on PGI than if there were five counselors. That Ruiz was one of only three counselors instead of one of five is not evidence that a continued medical leave would have been a reasonable accommodation.

In sum, there is no dispute that Ruiz was totally disabled and that no accommodation would have allowed her to perform her job as an admissions counselor for PGI. Neither the ADA nor FEHA required PGI to extend Ruiz's medical leave indefinitely until she was able to return to work. Accordingly, PGI has met its burden on summary judgment to show that Ruiz was not a qualified individual, and Ruiz has not demonstrated that there is a triable issue of fact. Summary judgment Ruiz's disability discrimination claims is therefore proper. *cf. Lawler*, 704 F.3d at 1243 (affirming summary judgment for employer where employee admitted that her disability prevented her from doing any work); *see also Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017) ("An employee who needs long-term medical leave cannot work and thus is not a 'qualified individual' under the ADA.").

### B. Retaliation Claim

"FEHA makes it unlawful for an employer 'to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.'" *Lawler*, 704 F.3d at 1243 (quoting Cal. Gov't Code § 12940(h)). "[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

PGI argues that Ruiz did not engage in protected activity. "[P]rotected activity takes the form of opposing any practices forbidden by FEHA or participating in any proceeding conducted by the DFEH or the Fair Employment and Housing Council (FEHC)." *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 380 (2015). "But protected activity does not include a mere request for reasonable accommodation. Without more, exercising one's rights under FEHA to request reasonable accommodation or engage in the interactive process does not demonstrate some degree of opposition to or protest of unlawful conduct by the employer." *Id.* at 381 (internal citations omitted). Here, Ruiz argues only that she engaged in protected activity by requesting an extension of her medical leave of absence. Such a request is not protected activity. Accordingly, PGI is entitled to summary judgment on this claim as well.

### C. Failure to Prevent Discrimination Claim

"Under California law, there can be no claim for failure to prevent discrimination when no actionable discrimination occurred." *McKenzie v. San Joaquin Valley Coll., Inc.*, No. EDCV1600769JGBDTBX, 2017 WL 2129685, at *12 (C.D. Cal. May 15, 2017) (citing *Trujillo v. N. County Transit Dist.*, 63 Cal. App. 4th 280, 289 (Cal. Ct. App. 1998)). Accordingly, because PGI is entitled to summary judgment on Ruiz's discrimination and

1  retaliation claims, PGI is entitled to summary judgment on her failure to prevent
2  discrimination claim as well.

### D. Wrongful Termination Claim

"The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Espinoza v. W. Coast Tomato Growers, LLC*, No. 14-CV-2984 W (KSC), 2016 WL 4468175, at *2 (S.D. Cal. Aug. 24, 2016) (quoting *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 154 (2014)). Although she complains that PGI did not include a separate section of its brief arguing for summary judgment on this claim, Ruiz concedes that this claim is premised on the same underlying conduct as her discrimination and retaliation claims. Because the undisputed facts establish that PGI did not violate the ADA or FEHA (the only public policies allegedly violated in the complaint) when it terminated her, PGI is entitled to summary judgment on this claim as well. *See Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (affirming summary judgment on public policy claim based on anti-discrimination law where plaintiff failed to a raise triable dispute as to discrimination claim)

### E. Intentional Infliction of Emotional Distress Claim

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal quotation marks omitted). In her opposition, Ruiz concedes that this claim is premised on the same employment actions underlying her discrimination and retaliation claims. Ruiz's intentional infliction of emotional distress ("IIED") claim therefore also fails because she has not identified any evidence of

discrimination or retaliation, let alone any extreme or outrageous conduct to that effect.[3] *Cf. Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) ("A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination."). Thus, PGI is entitled to summary judgment on Ruiz's IIED claim.

### IV. Cornerstone's Motion for Summary Judgment

The complaint alleges that Ruiz was "jointly employed" by PGI, Cornerstone, and ADP Totalsource III, Inc., a third defendant that has since been dismissed. [Doc. No. 1 ¶ 5.] Although the complaint does not assert the ADA claims against Cornerstone, the complaint does not make any allegations unique to any of the three defendants, simply referring to all three jointly as "Defendants." Cornerstone has filed a notice of joinder to PGI's motion for summary judgment, and also filed a separate motion for summary judgment arguing that in addition to all of the reasons argued by PGI, Cornerstone is entitled to summary judgment because it never employed Ruiz and therefore never took an adverse employment action against her.

Ruiz objects to the manner in which Cornerstone joined in PGI's summary judgment motion because "it is unclear exactly what specific facts and legal arguments from [PGI's] memorandum should be applied to Cornerstone." [Doc. No. 41-19 at 2.] The entire premise of Ruiz's case, however, is that Cornerstone and PGI "jointly employed" her and that therefore they are jointly liable for her termination, and the complaint makes no allegations unique to either defendant. Therefore, all of PGI's arguments for summary judgment necessarily are equally applicable to Cornerstone, and the notice of joinder was sufficient to put Ruiz on notice. For all of the reasons that PGI is entitled to summary

---

[3] The opposition also refers to statements allegedly made by a PGI employee to a potential employer of Ruiz in February 2017. Because these statements were made after the complaint was filed, they could not form the basis of the IIED claim alleged in the complaint. Accordingly, the Court disregards them for the purposes of summary judgment.

judgment, Cornerstone is entitled to summary judgment as well. Accordingly, the Court need not address Cornerstone's separate argument that Ruiz's claims fail because there was no employer-employee relationship between Cornerstone and Ruiz.[4]

## V. Disposition

In light of the foregoing, PGI's and Cornerstone's motions for summary judgment are **GRANTED**. The Clerk of Court shall enter **JUDGMENT** for Defendants and against Plaintiff and **CLOSE** this case.

It is **SO ORDERED**.

Dated: February 22, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[4] The Court did not consider the Declaration of Ron Jones in connection with Cornerstone's motion, so Ruiz's evidentiary objections to this declaration [Doc. No. 41-20] are denied as moot.